CYRIL E. SMITH, Appellant

v.

VIVIAN deFREITAS

No. 14,575

United States Court of Appeals

Third Circuit

Argued at Charlotte Amalie January 29, 1964

Decided April 3, 1964

*See, also, 329 F.2d 629*

WILLIAM W. BAILEY, ESQ. (BAILEY & WOOD), St. Thomas, Virgin Islands, *for appellant*

DAVID E. MAAS, ESQ. (MAAS & IRELAND), St. Thomas, Virgin Islands, *for appellee*

Before MARIS, STALEY and ALDRICH, *Circuit Judges*

MARIS, *Circuit Judge*

This suit involves a controversy as to the right of the defendant Vivian deFreitas to use a passage and stairway[1] through the land of the plaintiff Cyril E. Smith for the purpose of ingress to and egress from her property. The plaintiff sought an injunction in the District Court of the Virgin Islands to restrain the defendant from such use.

[1] Because of the hilly character of the terrain many streets and ways in St. Thomas include sections which comprise sets of stairways.

The district court held that the defendant was entitled to the use of the passage and stairway as a freeway and a way of necessity and entered a judgment so declaring and regulating its use. The plaintiff has appealed.

The plaintiff's property is known as No. 2a Sneglegade in Queen's Quarter in the town of Charlotte Amalie, St. Thomas, and abuts upon a public street known as Sneglegade. The property is located on a hillside and rises rather steeply away from the street toward the north. The defendant owns a property known as No. 2b Sneglegade which adjoins the plaintiff's property on the rear and extends farther up the hillside to the northward. Parcel No. 2b does not abut upon any street. Parcels Nos. 2a and 2b, together with a third parcel, No. 2c, farther up the hillside to the northward, were originally parts of a single parcel, No. 2 Sneglegade, which by a partition made by the owners in 1860 was divided into the three parcels, Nos. 2a, 2b and 2c.

Ancient plans on file in the Department of Public Works in St. Thomas show that as early as 1836 there were buildings on each of the portions of Parcel No. 2 Sneglegade which now comprise Parcels Nos. 2a, 2b and 2c, and that a passage which included three flights of stairs led down from the portion now known as No. 2b along the west boundary line through the portion now known as No. 2a to the public street, Sneglegade. Likewise a plan annexed to the partition agreement of 1860 and referred to therein shows the same buildings and the passage with its stairways leading from the buildings on the parcel designated thereon as No. 2b down to Sneglegade. That passage and its stairways, which constitute the way in controversy, still exist and extend over the westerly 5 feet of Parcel No. 2a from a door in the boundary wall between Parcels Nos. 2b and 2a southwardly alongside the plaintiff's dwelling house a distance of about 66 feet to Sneglegade. Three doors open

upon the passageway, the door at its upper end leading from the defendant's property, No. 2b, and the rear and front doors of the plaintiff's residence which occupies most of the remainder of Parcel No. 2a.

From 1860 to 1868 Parcels Nos. 2a and 2b were owned by different persons while from 1868 until 1884 and perhaps later they would appear to have been owned by the same person. At some time thereafter, the exact date not being clear from the record, their ownership was again severed. It is clear, in any event, that since March 1908 Parcels Nos. 2a and 2b have been owned by different individuals. Parcel No. 2a was acquired by the plaintiff by deed from Herman O. Creque on May 9, 1938. Parcel No. 2b and Parcel No. 3 Sneglegade were acquired by the defendant by deed from E. Leonard Brewer, executor of the Estate of Elvira A. Moron, deceased, on February 13, 1954.

It is the defendant's contention that the passageway in controversy is an ancient freeway (frigang) extending from the land now comprising Parcel No. 2b to Sneglegade, to the use of which she as the present owner of that parcel of land is entitled, and that in any event she is entitled to use the passageway as a way of necessity to which the owner of Parcel No. 2b became entitled when the ownership of Parcel No. 2a passed into other hands. The plaintiff urges, on the other hand, that since the defendant also owns Parcel No. 3 Sneglegade which adjoins Parcel No. 2b on the west and which abuts on both Sneglegade and Bjergegade, she has a means of access from her property No. 2b to the public streets through her property No. 3. This, he says, defeats the implication of a way of necessity through his property. To this the defendant replies that access from Parcel No. 2b to a public street through Parcel No. 3 requires going through a low narrow gateway in the wall between Parcels Nos. 2b and 3, then past a rear

shed, then through a rear yard, then down a set of steps and along a passage into which bedroom doors open, then at an angle to the right down another set of steps, and finally at an angle to the left through a passageway to the street, which at that point is Bjergegade not Sneglegade. This, says the defendant, is so inconvenient and inadequate a means of access from her property No. 2b to the public street as to warrant the continued implication of a way of necessity in her favor through the plaintiff's property.

The district court made the following findings of fact pertinent to these issues:

"3. That there exists between Parcel Nos. 2a and 3 a freeway (stairway) to Parcel No. 2b which has been used by the parties hereto and their predecessors in interest for many years, and the use of which by defendant is necessary as an approach to defendant's property; and

"4. That of necessity the plaintiff and the defendant as owners of the aforesaid parcels are entitled to the common and reasonable use of such freeway, the actual title to which shall be vested in the plaintiff, subject, however, to the rights of the defendant thereto."

■ We cannot say that the district court erred in finding that the passageway in question is an ancient freeway to the use of which the defendant is entitled. Plans Nos. 3 and 4 from the Hingelberg book of November 1836 on file in the Department of Public Works in St. Thomas, show the passageway as then existing and as the only way of access from the buildings in the area now known as Parcel No. 2b Sneglegade to the public street below. These Hingelberg plans establish that the passageway is a very ancient one. This fact is further confirmed by the physical characteristics of the passage and its stairways themselves, particularly the upper end of the passage which comprises an ancient set of steps and a doorway leading only into the defendant's property No. 2b.

The agreement of partition dated April 26, 1860, be-

tween the owners of the former Parcel No. 2 Sneglegade expressly provided that the division of the property was to be according to a plan of the whole lot made by the Royal Surveyor, Major Strandgaard, which was annexed to the agreement. The annexed Strandgaard plan clearly showed the passageway and stairs in question running from the south line of the new Parcel No. 2b along the west line of the new Parcel No. 2a southwardly down to Sneglegade.

 The plaintiff urges that neither the agreement of partition nor the subsequent deeds contain any express grant of the easement of the right of way in question and that the defendant is, therefore, not entitled to it. We do not agree. The Danish law which was in force in St. Thomas prior to 1921,[2] it is true, required the registration of rights of property. But, as F. Vinding Kruse states in his work, Ejendomsretten [Property Law], Kobenhavn, 1951, 3d ed., Vol. 1, p. 1041:

"An important exception to the demand for registration relates to private rights of way, since here a rule applies that, when a certain path is the only or the main access to property or to some of its plots and the right of way is indicated on the maps, the right of way, even if it is not registered, may not be dislodged by later owners of the servient estate."[3]

Under this rule of the Danish law right to use the passageway here in question, provided it was the only or main access to Parcel 2b (a point which will be hereinafter discussed), vested in the grantee of that parcel under the recorded partition agreement of 1860 even though not mentioned therein since it was indicated on the map or plan attached to and recorded with that agreement. In this respect the Danish law was similar to the rules of the com-

[2] On July 1, 1921, the rules of the common law as understood in the United States came into force in St. Thomas. Code of Laws of St. Thomas and St. John, approved March 17, 1921, title IV, chap. 13, sec. 6.

[3] We are indebted to Johannes Klesment, Esq., of the European Law Division of the Law Library of Congress, for furnishing us with this authority and its English translation.

mon law now in force in St. Thomas. For under the common law when land is conveyed by a description which refers to a plan or map on which an abutting way is shown an easement therein is implied in the conveyance[4] and deemed a part of the property to which the grantee is entitled, and neither the grantor nor any person claiming under him may repudiate the easement or deny that it exists, if it is capable of existence.[5] It follows that the defendant as successor in title to Theresine Victorine Souffront to whom Parcel No. 2b was conveyed by the partition agreement of 1860 is not precluded from using the disputed passage and its stairways merely because its use was not expressly granted in the partition agreement and subsequent deeds.

It will be seen from the statement of Kruse which we have quoted that the Danish law included the concept that an unregistered right of way, in order to be recognized, must also be the only or principal means of access to the property in question. In other words it must be a way which is reasonably necessary for access to the property from the public street or road. In this respect also the Danish law was similar to the common law rules which succeeded it in St. Thomas. For under the common law when a tract of land is conveyed and there is no means of access thereto except over the remaining land of the grantor or the land of strangers the grant of a way of necessity over the grantor's remaining land is ordinarily implied by law as an incident to the grantee's occupation

---

[4] Smith v. Young, 1895, 160 Ill. 163, 43 N.E. 486; Marshall v. Lynch, 1912, 256 Ill. 522, 100 N.E. 289; Billings v. McDaniel, 1950, 217 S.C. 261, 60 S.E.2d 592; Spencer v. Wiegert, 1960, Fla., 117 So.2d 221; Powell on Real Property, Vol. 3, para. 409; Tiffany, Real Property, 3d ed. § 800; 17A Am. Jur., Easements, § 37.

[5] Cook v. Totten, 1901, 49 W. Va. 177, 38 S.E. 491; Oney v. West Buena Vista Land Co., 1905, 104 Va. 580, 52 S.E. 343; Gerald Park Improvement Ass'n. v. Bini, 1951, 138 Conn. 232, 83 A.2d 195; Gerbig v. Zumpano, 1960, 7 N.Y.S.2d 327, 165 N.E.2d 178; 17A Am. Jur., Easements, § 39.

and use of the land conveyed.[6] Likewise if the land retained by the grantor is surrounded by the land conveyed and the land of strangers, the law implies the reservation by the grantor of a way of necessity over the land conveyed.[7] It has also been held at common law that the necessity for the way is not limited to an absolute physical necessity and that it is enough to warrant the implication of a way of necessity to show that the way is reasonably necessary,[8] a concept quite analogous to the Danish idea that the rule applies to a way which is the only or *main* access to the property involved.

■ There appears to be another basis in the Danish law for supporting the defendant's right to the use of the passage in question, namely, that her predecessors in title acquired a prescriptive right to its use. The Code of King Christian the Fifth of 1683 which was in force in St. Thomas prior to 1921, provided in Book V, chapter 5, sections 1 and 2:

"1. If a person has been in possession of real or movable property for twenty years without any person who alleges to have a right to this property bringing a legal action against the actual possessor, the possessor shall have acquired a prescriptive title [adverse possession] to this property.

"2. The prescriptive title may be acquired in a right of use [easement] or in the property [itself]."[9]

[6] Ellis v. Bassett, 1891, 128 Ind. 118, 27 N.E. 344; Camp v. Whitman, 1893, 51 N.J. Eq. 467, 26 A. 917; Brasington v. Williams, 1927, 143 S.C. 223, 141 S.E. 375; Restatement, Property, § 476; Powell, Ibid., para. 410; Tiffany, Ibid., § 793; Jones on Easements (1898) §§ 298 et seq.; 28 C.J.S. Easements § 35.

[7] Perodeau v. O'Connor, 1957, 336 Mass. 472, 146 N.E.2d 512; Powell, Ibid., para. 410; Tiffany, Ibid., § 793; 17A Am. Jur., Easements, §§ 41, 45; Jones on Easements (1898), § 306; Simonton, Ways by Necessity, 25 Col. L. Rev. 571 (1925).

[8] Clement v. Fishler, 1927, 28 Ohio App. 392, 162 N.E. 706; Harris v. Gray, 1945, 28 Tenn. App. 231, 188 S.W.2d 933; Ashby v. Justus, 1945, 183 Va. 555, 32 S.E.2d 709; Boucherie v. Garrette, 1961, Okla., 366 P.2d 763; Powell, Ibid., para. 410; Jones on Easements (1898) § 315.

[9] Translation by Johannes Klesment, Esq., of the European Law Division of the Law Library of Congress.

Here it is clear that the passageway in question has existed for more than 100 years and the evidence supports the finding that it had been used by the parties and their predecessors in interest for many years, certainly for at least 20 years prior to 1921.

The plaintiff urges that the defendant's right to use the passage has been lost by nonuse. We do not agree. Here we look to the common law rules in force in St. Thomas since 1921 and observe that it is the prevailing rule that an easement created by grant, either express or implied by necessity, is not lost by mere nonuse.[10] In order to establish an abandonment of such a right it is necessary to prove both an intention to abandon and also some overt act or failure to act which carries with it the implication that the owner neither claims nor retains any interest.[11] It is not suggested that any such evidence was offered in this case.

As we have seen, the district court found as a fact that use of the way through the plaintiff's property straight down to Sneglegade was necessary to the defendant as an approach to her property No. 2b. We cannot say that this finding, in the sense that the court found the passage to be the main means of access to Parcel No. 2b, was erroneous. In addition to having the witnesses and documents before him the trial judge had the benefit of a view of the premises and was, accordingly, peculiarly in a position to form a judgment as to whether the way through the plaintiff's property was reasonably necessary to the defendant as a principal means of access to her property No. 2b in the

[10] Kurz v. Blume, 1950, 407 Ill. 383, 95 N.E.2d 338, 25 A.L.R.2d 1258; Klein v. Dove, 1954, 205 Md. 285, 107 A.2d 82, 87; Haley v. Los Angeles County Flood Control District, 1959, 172 Cal.App.2d 285, 342 P.2d 476; Annotation 25 A.L.R.2d 1265.

[11] Gerbig v. Zumpano, 1960, 7 N.Y.2d 327, 165 N.E.2d 178, 180–181; Restatement, Property, § 504; Powell, Ibid., para. 423; Tiffany, Ibid., § 825; 17A Am. Jur., Easements, § 159; 28 C.J.S. Easements, §§ 58–60.

light of her possible alternative means of access through her adjacent property No. 3.

Since the findings of the court support the judgment appealed from the latter will be affirmed.

The judgment of the district court will be affirmed.