WILLIAMS, APPELLEE, *v.* MORRIS, WARDEN, ET AL., APPELLANTS.

[Cite as *Williams v. Morris* (1992), 62 Ohio St.3d 463.]

(No. 90–1273—Submitted October 15, 1991—Decided February 5, 1992.)

*Saundra J. Robinson,* for appellee.

*Lee I. Fisher,* Attorney General, and *John J. Gideon,* for appellants.

*Per Curiam.* For the following reasons, we affirm the judgment of the court of appeals in part and reverse it in part.

## I

## Specificity of the Order

R.C. 2967.15 states in part:

"In the event the [adult parole] authority fails to make a determination of the case of a parolee alleged to be a violator of the conditions of his pardon or parole within a reasonable time such parolee shall be released from custody *under the same terms and conditions of his original pardon or parole.*" (Emphasis added.)

Appellants first argue that they cannot be held in contempt because the order they were found to violate merely ordered them to release appellee, not release him under the terms and conditions of his original parole, or even pursuant to R.C. 2967.15. They cite *South Euclid Fraternal Order of Police, Lodge 80 v. D'Amico* (1987), 29 Ohio St.3d 50, 52, 29 OBR 398, 400, 505 N.E.2d 268, 270, in which we stated:

" * * * [W]e hold that in a declaratory judgment action contesting the constitutionality of an ordinance, an entry granting judgment to plaintiffs without expressly directing the defendants to do, or refrain from doing, a particular thing or things, cannot be the basis of finding the defendants in contempt upon the enactment of subsequent legislation, allegedly containing the same or similar infirmities. * * * "

In that case, the city adopted an ordinance governing sick leave for police and firefighters. The plaintiffs challenged the constitutionality of the ordinance. The trial court upheld the constitutionality of the ordinance, but the court of appeals found it unconstitutional and reversed and remanded the cause, ordering the trial court to enter final judgment for the plaintiffs, which the trial court did. Thereafter, the city enacted a new ordinance, which, in a motion for contempt, plaintiffs argued violated the prior order. The trial court denied the motion, and the court of appeals affirmed, holding that its prior order and the trial court's prior order pursuant to remand did nothing but find the first ordinance unconstitutional; neither order directed the city to do anything, and therefore there was no order that the city could have violated. This court affirmed, pursuant to the above-quoted language.

The instant case is similar. Here, the court of appeals ordered appellants to release appellee, which they did. In its judgment entry, it did not specifically or generally refer to R.C. 2967.15's language that appellee should be released under the terms and conditions of his original parole. Moreover, the referee's

report, which the judgment entry adopted, only referred to R.C. 2967.15 in passing in connection with the duty to hold a hearing within a reasonable time, and did not mention it as the basis on which appellee must be discharged from custody.

Subsequently, appellants released appellee under their own interpretation of R.C. 2967.15. That interpretation may have been wrong, as discussed in Part II, *infra*, but it was not in disregard of the court of appeals' express judgment entry. Accordingly, there was no basis for the finding of contempt.

## II

### Construction of R.C. 2967.15

The court of appeals enforced R.C. 2967.15 literally. Appellants argue that the provision should be read *in pari materia* with other statutes and rules governing parole, particularly R.C. 2967.01(E), which states:

As used in Chapter 2967. of the Revised Code:

" * * *

"(E) 'Parole' means the release from confinement in any state penal or reformatory institution by the adult parole authority that is created by section 5149.02 of the Revised Code and *under any terms and for any period of time that is prescribed by the authority in its published rules and official minutes.* A parolee so released shall be supervised by the authority. Legal custody of a parolee shall remain in the department of rehabilitation and correction until a final release is granted by the authority pursuant to section 2967.16 of the Revised Code." (Emphasis added.)

This virtually plenary authority, they argue, provides a basis for Ohio Administrative Code 5120:1–1–12(B)(3), which states:

"(B) The Parole Board shall impose the following minimum conditions of release:

" * * *

"(3) The releasee shall comply with all lawful orders given him by duly authorized representatives of the Department of Rehabilitation and Correction or its agencies, *which shall include any special conditions of release that may be issued orally or in writing at any time during supervision* [.]" (Emphasis added.)

Thus, "parole" is defined as release subject to whatever rules the authority adopts, and the authority has adopted Ohio Adm.Code 5120:1–1–12(B)(3), which states that special conditions of parole may be issued at any time during supervision. This is the general law of parole. However, the court of

appeals construed R.C. 2967.15 as a special provision that restrains part of the APA's otherwise near plenary authority to adopt rules. We agree.

R.C. 2967.15 states that a parolee must be released under the same terms *and conditions* of his prior parole. "Conditions" are not part of R.C. 2967.01(E)'s definition of parole. They are imposed by rule via the parole agreements entered into with parolees. "Conditions" includes "special conditions," which were specifically identified in the agreement in question. Thus, by requiring parolees to be released under the conditions of their original parole, R.C. 2967.15 creates a specific statutory exception to the general *term* of parole, established by Ohio Adm.Code 5120:1-1-12(B)(3), that special conditions may be issued at any time. However, when a statute is in conflict with a rule, the rule must yield. *McAninch v. Crumbley* (1981), 65 Ohio St.2d 31, 34, 19 O.O.3d 225, 226-227, 417 N.E.2d 1252, 1255. This means that new special conditions cannot be imposed until the parolee is rereleased from confinement.

There appears no reason why the APA could not immediately impose new special conditions on the parolee *after* release. However, in this case, the APA imposed new special conditions before releasing the parolee. This was not in accord with R.C. 2967.15, which specifies release under the same conditions as the original parole.

While it might be argued that construing R.C. 2967.15 to require release under the conditions of the original parole, but permitting the conditions to be changed immediately after release, is an absurd result, we perceive that a parolee detained for an unreasonable time before hearing has been denied a statutory right under R.C. 2967.15 and possibly a constitutional right under *Morrissey v. Brewer, supra.* By ordering release under prior conditions, the General Assembly is commanding that the parolee be restored to his former status immediately, without further administrative delay in derogation of these rights.

Accordingly, we reverse the decision of the court of appeals insofar as it held appellants in contempt, but affirm the decision insofar as it ordered appellee's release on parole subject to the special conditions of his original parole.

*Judgment affirmed in part*
*and reversed in part.*

MOYER, C.J., SWEENEY, HOLMES, DOUGLAS, WRIGHT, H. BROWN and RESNICK, JJ., concur.