[Cite as *In re GMS Mgt. Co., Inc. v. Unpaid Court Costs, Fees & Delinquencies*, 187 Ohio App.3d 426, 2010-Ohio-2203.]

STATE OF OHIO, MAHONING COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

IN RE GMS MANAGEMENT   )
COMPANY, INC.      )
            )
  APPELLANT,     )  CASE NO. 09 MA 169
            )
  V.-        )  O P I N I O N
            )
UNPAID COURT COSTS, FEES  )
AND DELINQUENCIES,    )
            )
  APPELLEE.      )

CHARACTER OF PROCEEDINGS:  Civil Appeal from County Court No. 4,
                 Case No. 09 OPEN.


JUDGMENT:         Reversed and Remanded.


<u>APPEARANCES</u>:

Michael Stavnicky and T. Christopher O'Connell, for appellant.

Paul J. Gains, Mahoning County Prosecuting Attorney, and Llinette Straford, Assistant Prosecuting Attorney, for appellee


<u>JUDGES</u>:
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite
Hon. Mary DeGenaro

          Dated: May 14, 2010

VUKOVICH, Presiding Judge.

¶{1}   Plaintiff-appellant, GMS Management Company, Inc., appeals a decision of Judge David D'Apolito of Mahoning County Court No. 4, which found that GMS owes over $3,000 for court costs and ordered the clerk of that court to refuse to accept any new pleadings even if court costs are advanced until all prior delinquent costs and fees have been paid in full.   We agree with appellant's argument that this decision was unconstitutionally entered without notice or an opportunity to be heard and is an unconstitutional denial of access to the courts.   For the following reasons, the judgment of the trial court is reversed, and the case is remanded based upon constitutional violations.

## STATEMENT OF THE CASE

¶{2}   On September 2, 2009, the court sua sponte entered a judgment entry against GMS in a case the court created under the case number "09 OPEN" and entitled *In re GMS Mgt. Co., Inc. v. Unpaid Court Costs, Fees & Delinquencies.*   This entry reads:

¶{3}   "The court, sua sponte, finds that GMS Management Co., Inc. is delinquent in its payments of court costs and fees owed to the court.   The court finds that the balance remains outstanding in an amount in excess of three thousand dollars ($3,000).   The court further finds that a pattern of conduct has developed whereby GMS Management has consistently failed to satisfy its financial obligations to this court.   This conduct has necessitated the court to file orders on two prior occasions suspending all filings by GMS Management until the arrearages were satisfied in full.

2

¶{4} "Therefore, it is ordered that to insure the proper administration of this court, the clerk of Mahoning County Court #4 is hereby ordered not to accept any new pleadings, with or without court costs advanced, until all prior delinquent costs and fees have been paid in full and properly receipted from GMS Management Co., Inc.

¶{5} "It is so ordered.

¶{6} "There is no just cause for delay. This is a final appealable order." (The original was in all capital letters.)

¶{7} On September 24, 2009, an agreed judgment entry was filed in this 09 OPEN case. The entry noted that GMS had filed an original action in the Ohio Supreme Court against the court and the clerk on August 6, 2009, relating to the court's ability to assess certain fees and charges and the timely processing of filings and court proceedings. The entry stated that GMS had been paying its filing fees and writ fees for evictions, and the court had been attempting to assess GMS for additional costs and fees. The entry continued to state that GMS alleged that the court and the clerk had improperly assessed GMS for costs associated with serving and/or enforcing writs of restitution in conflict with R.C. 311.17 and 1923.09, alleging that these costs are to be taxed against the debtor/defendant.

¶{8} The entry also disclosed that GMS had agreed to dismiss the original action without prejudice and that the parties would proceed instead by way of a direct appeal from the September 2, 2009 entry. In return for the dismissal, the court agreed to stay the September 2 judgment and permit GMS to file new actions and to provide GMS with an accounting of all court costs and fees associated with GMS matters for the years 2005 through 2009. The stay of the September 2 judgment was also conditioned

3

on GMS's depositing $4,049.30 with the clerk to be held in trust pending the resolution of the appeal.

¶{9} On September 29, 2009, GMS filed a timely appeal, attaching both entries. In response to the brief filed by GMS, the prosecutor's office submitted an appellee's brief on behalf of the trial court.

Assignment of Error Number One

¶{10} Appellant's first assignment of error provides:

¶{11} "The trial court erred violating GMS' due process rights by issuing a judgment without notice or a right to be heard."

¶{12} Rather than respond to the merits of this assignment, the trial court's brief merely counters that this issue is moot. The trial court urges that because it lifted the sanction prohibiting new filings, there is no remedy for this court to grant, and any opinion would be advisory. The trial court continues that the two exceptions to the mootness doctrine are inapplicable.

¶{13} First, the court states that the issue is not capable of repetition but evading review. The court states that GMS should have appealed the imposition of costs and fees that it claims were wrongly imposed in the multiple cases giving rise to the court's September 2 order. This issue is discussed under assignment of error three, where the trial court more thoroughly argues it. The court also claims that the issue of delinquent fees will not arise again because there is a new court rule requiring payment of fees up front. The court attaches a magistrate's decision form with a blank, stating that the writ shall issue "immediately upon receipt of costs and fees." However, the blank is optional, and this form is not a court rule. As for the second exception, the trial court

4

urges that this is not a constitutional question or a matter of great public importance. Yet the procedural due process issues raised here present constitutional questions.

¶{14} However, we need not confine our analysis to exceptions to the mootness doctrine. Where the matter is not moot in the first place, the exceptions are irrelevant. The trial court's September 24, 2009 judgment entry did not moot the procedural due process issues that resulted in the court's September 2, 2009 judgment entry. The portion of the September 24, 2009 entry lifting the sanction prohibiting new filings was clearly and merely *a stay*. That is, the trial court ordered that it would "stay the Judgment and permit GMS to file new pleading, motions, and actions" and declared:

¶{15} "[T]he Judgment entered by this Court on September 2, 2009, is hereby stayed upon GMS depositing $4,049.30 with the Mahoning County Clerk of Court, which deposit shall be held in trust by the Clerk pending the resolution of the Appeal. Payment of this deposit is not satisfaction of the Judgment and shall not be deemed to satisfy the Judgment. The Mahoning County Clerk of Court shall accept and process all new pleading and filings from GMS.

¶{16} "Nothing contained herein shall be deemed a waiver or release by GMS of any of its rights, remedies, causes of action or claims associated with the Dispute, the Original Action, the Judgment or the Appeal."

¶{17} A trial court's act of temporarily lifting a sanction pending appeal and requiring a deposit for this lifting is clearly the staying of a judgment rather than settlement or mooting of the issue. See App.R. 7(A) (stay ordinarily sought in trial court in the first instance) and (B) (stay may be conditioned on giving of bond). A stay does not moot an appeal; rather, the very point of a stay pending appeal is to keep an appeal

5

from becoming moot. See generally *Am. Energy Corp. v. Datkuliak*, 174 Ohio App.3d 398, 2007-Ohio-7199, ¶ 23-34 (*failing* to seek a stay mooted the appeal). Thus, contrary to the trial court's initial argument, GMS's constitutional arguments were not mooted by the September 24, 2009 entry.

¶{18} We now turn to the merits of this assignment of error. GMS complains that the court entered an order in a nonexistent action prohibiting any new filings and requiring the payment of an inexact amount ("in excess of" $3,000) without providing notice or an opportunity to be heard. GMS equates the trial court's actions with illegal contempt proceedings, urging that no court order had been violated, no show-cause order had been issued, and no opportunity to defend against the allegations had been provided where GMS could evaluate the source of the fees and argue the statutory requirements for payment of fees.

¶{19} This argument has merit. Both the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution guarantee due process of law. Procedural due process ensures the opportunity to be heard after notice of a hearing before depriving a party of a property interest. *Ohio Assn. of Pub. School Emp. v. Lakewood City School Dist. Bd. of Edn.* (1994), 68 Ohio St.3d 175, 176. Thus, a party must be given reasonable notice that is sufficient to allow that party to prepare a defense and then must be provided a meaningful opportunity to be heard before an order requires payment and simultaneously prohibits the exercise of a legal right. See generally *Cleveland Bd. of Edn. v. Loudermill* (1985), 470 U.S. 532, 542; *Galt Alloys, Inc. v. Key Bank Natl. Assn.* (1999), 85 Ohio St.3d 353, 357; *State v. Hochhausler* (1996), 76 Ohio St.3d 455, 459.

6

¶{20} There is dearth of case law on the precise topic here. In one case concerning the postjudgment addition of certain costs, a court-appointed guardian ad litem had filed a postjudgment motion seeking $2,300 in fees. The motion had apparently not been served on the parties. Nor did the court give notice and opportunity to be heard before it ordered the guardian ad litem's fees to be assessed as court costs, which had previously been imposed upon the father. The Fourth District reversed and remanded, finding that this judgment constituted a violation of procedural due process. *In re B.B.M.* (Dec. 10, 1997), 4th Dist. No. 97CA2274.

¶{21} As GMS suggests, the court's action here could be likened to a summary contempt judgment. The failure to comply with a court order is indirect contempt. *In re Guardianship of Myers*, 7th Dist. Nos. 02CA6 and 02CA42, 2003-Ohio-5308, ¶ 29. See also R.C. 2705.02(A) (disobedience of or resistance to an order, judgment, or command of a court or officer constitutes contempt). It is civil contempt when the purpose of the punishment is coercive, remedial, and conditional and when the contemnor is usually able to purge the contempt by compliance with the court order. *In re Olivito*, 7th Dist. No. 04MA42, 2005-Ohio-2701, ¶ 21.

¶{22} Here, the court attempted to remediate a perceived delinquency and to coerce GMS into satisfying it by imposing the punishment of denying access to the court until the delinquency is cured. However, the court failed to provide notice or an opportunity to be heard. The court essentially combined a complaint and a judgment in one filing.

¶{23} As GMS points out, there also must be a pre-existing court order before one could be found to be in violation of a court order. See *Consol. United Methodist*

7

*Church v. Knowles*, 11th Dist. No. 2006-T-0110, 2007-Ohio-3383, ¶ 34 ("Proceedings for contempt for noncompliance will not lie where the order does not expressly address the alleged act of disobedience"), citing *S. Euclid Fraternal Order of Police, Lodge 80 v. D'Amico* (1987), 29 Ohio St.3d 50 (because there was no court order of record directing how the city was to proceed, the city could not be held in contempt of an order that generally granted a judgment). Considering the state of our record, we cannot discern whether the court had previously ordered GMS to pay this delinquency or whether GMS was liable for the costs in the prior unidentified court actions.

¶{24} In any event, this indirect contempt, for failure to pay a sum supposedly owed to the court, cannot be punished summarily.  *Olivito*, 2005-Ohio-2701, at ¶ 23; *Myers*, 2003-Ohio-5308, at ¶ 32.  See also R.C. 2705.03 (where court is punishing disobedience of court judgment, order, or command, a charge must be filed in writing and entered in the journal, and the person charged must have the opportunity to be heard); 2705.05 (in all contempt proceedings, the court must conduct a hearing). Such action is a violation of procedural due process rights because notice and opportunity to be heard are required before such a finding is made.  Id.

¶{25} We conclude that there was a due process violation when the trial court sua sponte opened a case and, without notice or the opportunity to be heard, entered a final order stating that no further filings would be accepted in any future or current cases (even if costs were advanced in those cases) unless GMS paid costs that the court had not required GMS to advance in multiple prior cases in which costs ended up being assessed against the tenant.  Whether the court was attempting to proceed as in the case of a contempt or the court was creating a case to address outstanding fees in an

8

attempt to get around the statutory contempt requirements, the procedure used constituted a violation of the due process rights of GMS.

Assignment of Error Number Two

¶{26} Appellant's second assignment of error alleges:

¶{27} "The trial court erred by denying and refusing GMS access to the courts."

¶{28} Besides the fact that current and future access to the court was denied without notice and an opportunity to be heard, GMS adds that denial of access to the courts is acceptable only in certain limited circumstances, such as the case of a vexatious litigator, and even then, the court cannot deny access when there is a legitimate filing. GMS cites Article I, Section 16 of the Ohio Constitution, which provides:

¶{29} "All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay."

¶{30} A vexatious-litigator case addressed due process and the constitutional right to access to the courts. *Mayer v. Bristow* (2000), 91 Ohio St.3d 3. The court held that the General Assembly had exercised a rational policy choice to force a vexatious litigator into a single forum for preliminary review of his filings. Id. at 15. The court noted that access to the courts is not denied regarding legitimate claims. Id. at 14.

¶{31} On the contrary, the trial court's denial of access here was not pursuant to a statute, as the trial court's brief cites no legislative enactment that similarly permits the denial of access to the courts in situations where a party owes the court money. The trial court's order here bars even legitimate filings where costs have been advanced and

9

where the claims have no relation to the actions from which the dispute arose. As GMS points out, even a vexatious litigator can have legitimate filings accepted for review, and any barring of all future actions would be constitutionally infirm. See id. at 14; *State ex rel. Charvat v. Frye*, 10th Dist. No. 06AP-100, 2006-Ohio-5947, ¶ 12 (prior vexatious acts cannot be punished by refusing new legitimate actions); R.C. 2323.52(F)(1).

¶{32} The trial court's order barring all current and future actions and filings, even if fees were advanced and even in cases unrelated to the costs supposedly owed, constitutes an improper denial of access to the courts. This is especially true where due process was not respected (as discussed in the prior assignment of error). Cf. *Mayer*, 91 Ohio St.3d at 17-18 (the denial of access to the court by a mail restriction did not result from a procedural due process violation because the vexatious-litigator statute provided notice and an opportunity to be heard). See also R.C. 2323.52(C) (a vexatious-litigator action shall proceed as a regular civil action). Therefore, this assignment of error has merit.

¶{33} Finally, we note that the trial court's brief raises its mootness argument in response to this assignment as well. For the reasons set forth at the beginning of the first assignment of error, this assignment of error is not moot. That is, a stay of a judgment pending appeal does not moot a sanction. Plus, this is a constitutional question, and review would be permitted in any event.

Assignment of Error Number Three

¶{34} GMS's third assignment of error contends:

¶{35} "The trial court erred in assessing costs and charges to the plaintiff in violation of R.C. 2335 et seq. and 311.17."

10

¶{36} GMS states that the court cannot come after it for delinquent costs that were never assessed to it. GMS quotes landlord-tenant law providing: "If the judge finds the complaint to be true, the judge shall render a general judgment against the defendant, in favor of the plaintiff, for restitution of the premises and costs of suit." R.C. 1923.09(A). GMS also points out that a writ-of-restitution statute provides that the sheriff shall charge certain fees for the service and return of writs of possession or restitution, "which the court or its clerk shall tax in the bill of costs against the judgment debtor or those legally liable thereforfor the judgment." R.C. 311.17.

¶{37} GMS continues by citing R.C. Chapter 2335, which reads as requiring outstanding costs to be collected from the person who was said to be liable for them. See R.C. 2335.18 (costs shall be taxed); 2335.19(4) (costs of party recovering shall be carried in that person's judgment and costs against whom judgment is rendered shall be separately stated in the record or docket; party in whose favor judgment for costs rendered cannot release debtor from obligation to pay costs unless that party previously advanced costs to the clerk) and (B) (judgment for costs allows clerk to issue certificate of judgment to collect against person liable for costs); and 2335.21 (remedy is to execute against indebted party).

¶{38} Initially, the trial court's brief states that the provisions within Chapter 2335 apply only to common pleas courts. GMS counters that these provisions do generally apply to the clerk of county courts as well. See R.C. 2303.31 ("The duties prescribed by law for the clerk of the court of common pleas shall, so far as they are applicable, apply to the clerks of other courts of record") and 2335.18 ("the costs * * * in any of the courts of this state, shall be taxed and entered of record separately"). See also R.C. 2335.20

11

(specifying "the clerk of the court or the judge of a county court, issuing execution for a judgment as provided by section 2335.19"); and 2335.24(B)(3) (the term "legislative authority" in the section dealing with contracts for collection services includes a board of county commissioners "if the clerk of the court involved is the clerk of a county court").

¶{39} The trial court insists that GMS could have filed a declaratory-judgment action seeking to prohibit the court from holding it liable for these costs and to mandate the court to remedy the past imposition of liability. This was essentially the purpose for the original action in the Supreme Court. However, GMS decided to pursue the matter by way of the direct appeal of the September 2, 2009 entry. Even if a declaratory-judgment action may have been available, it would not disallow a direct appeal of a judgment entry, as there is a right to appeal a final order to the court of appeals.

¶{40} Thus, the trial court contends that the appeal of this issue is untimely because GMS should have filed an appeal from each case containing outstanding costs and argued the assessment in each individual case. GMS responds that costs against it were never part of any judgment until the September 2, 2009 entry, and thus it had nothing to appeal in the individual cases, in which costs were typically assessed against the evicted tenant.

¶{41} The answer to this question lies in the answer to the next issue raised by the trial court's brief: there is no record from which this court can make its ruling. The record in this case consists merely of the September 2, 2009 judgment entry quoted above and the September 24, 2009 stay order. GMS is unaware of the exact source of the costs in each unidentified case. We remain unaware of which cases have outstanding costs and what each individual cost assessment represents. At one point, it

is suggested that GMS did pay for the writs of restitution; at another point, it is implied that the cost of the writs had not been advanced; at yet another point, it is stated that unknown additional fees were added.

¶{42} Moreover, we cannot resolve whether costs were assessed against the tenant as opposed to GMS in each individual case. In fact, the trial court's brief (by arguing that GMS could have appealed in each individual case) suggests that costs were assessed against GMS, whereas GMS disputes this suggestion.

¶{43} As the facts of the case are not contained in the record, we are unable to apply the statutes to the facts of the case. Likewise, we are unable to enter an order prohibiting certain actions without knowing whether the actions were actually performed and without knowing the basis for those actions. We have not been asked to (nor could we) add matter to the record that was not presented in this case below. See *State v. Ishmail* (1978), 54 Ohio St.2d 402, 406.

¶{44} Notably, GMS does not actually dispute this barrier to our review in its reply to the trial court's brief on this topic. Rather, GMS points out that the reason for the lack of a record was the trial court's method of entering a judgment in a newly created case without notice or an opportunity to be heard. This conclusion coordinates with the first two assignments of error regarding the need to reverse and remand. Regardless of the genesis of the lacking record, the file does not permit a review of the court's finding that GMS owes court costs.

Assignment of Error Number Four

¶{45} Appellant's fourth assignment of error provides:

13

¶{46} "The trial court has erred by failing to provide any refunds or accounting of court costs as required by R.C. 1907.20."

¶{47} As for entitlement to a refund, the record is inadequate to evaluate this issue, as discussed above. Moreover, it is unknown what funds GMS claims should be refunded: the deposit securing the stay (which is the subject of the prior assignment of error) or some other funds.

¶{48} As for the lack of an accounting, the trial court's brief states that this issue is not ripe and that GMS cannot raise issues that occurred after the appeal was filed. That is, the trial court allegedly has not provided an accounting for the years 2005 through 2009 after it agreed to do so in the September 24, 2009 judgment. This issue is the subject of an original action filed by GMS against the clerk and the trial court in 7th Dist. No. 10MA1.

¶{49} Although GMS filed a detailed reply brief here, the brief did not counter the argument that this assignment of error improperly deals with occurrences subsequent to the appeal. Because the failure to comply with the settlement portion of the September 24, 2009 judgment occurred after this appeal and is the subject of an original action, it is not part of this appeal.

¶{50} In addition, as this case is being reversed and remanded as a result of procedural-due-process violations and the access-to-the-courts violation, any lack of sufficient notice reasonably calculated to allow GMS to present a defense may be corrected by the notice issued by the trial court after the remand.

¶{51} Furthermore, considering the lack of a record in this case due to the court's failure to provide notice and an opportunity to be heard, we cannot actually

14

discern what if anything had been provided to GMS regarding its liability for court costs. Similarly, what the clerk does or does not do on a regular basis has not been established in the record below.

¶{52} Thus, we cannot evaluate any suggestion here that the court or the clerk failed to provide a proper accounting prior to entering the September 2, 2009 entry. Accordingly, we cannot address this assignment of error.

¶{53} For the foregoing reasons, the judgment of the trial court is hereby reversed, and this cause is remanded based on unconstitutional findings.

Judgment reversed

and cause remanded.

WAITE and DEGENARO, JJ., concur.